**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **GUY NEIGHBORS,** ) <br> ) <br> **Defendant.** ) <br> ) | **Case No. 07-20124-CM** |

## MEMORANDUM AND ORDER

This criminal case is before the court on Defendant's Pro-Se Motion to Dismiss the Pending Indictment[] with Prejudice on Grounds of Due Process of Law Violation (Doc. 635), filed while defendant was represented by counsel on January 9, 2014, and defendant's Motion to Dismiss with Prejudice (Doc. 656), filed while defendant proceeded pro se with standby counsel on March 13, 2014. On March 6, 2014, the court held a hearing to address Doc. 635, among other motions. During that hearing, the court denied Doc. 635 in part (relating to defendant's allegations of due process violations). But the court noted that defendant had also made a constitutional speedy trial argument in his motion that the government did not address in its brief. The court asked for additional briefing on the constitutional speedy trial issue—specifically addressing the *Barker v. Wingo* factors. The court also instructed the parties to address only the constitutional speedy trial issue in their supplemental briefs.

In response to the court's order, defendant filed Doc. 656. In this motion, defendant argues that both his statutory speedy trial rights have been violated, as well as his constitutional speedy trial rights. The government's response addresses only whether defendant's statutory speedy trial rights have been violated—omitting any discussion of the constitutional right to a speedy trial or the *Barker* factors.

-1-

Despite the parties' focus on defendant's statutory speedy trial rights, the court is going to turn first to defendant's constitutional speedy trial rights. That is the issue that the court ordered briefed. And if the court finds that defendant's constitutional speedy trial rights have been violated, there is no need to further consider his statutory rights. The remedy for a constitutional violation is dismissal with prejudice, while a statutory violation may result in dismissal either with or without prejudice. *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) (citation omitted).

A defendant has a Sixth Amendment right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 515 (1972). This right is both "amorphous" and "fundamental." *United States v. Seltzer*, 595 F.3d 1170, 1172–73 (10th Cir. 2010); *see also Barker*, 407 U.S. at 521 ("[T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate."). Regardless of whether a defendant's statutory right to a speedy trial has been violated, the court may still find a constitutional violation. *See United States v. Gomez*, 67 F.3d 1515, 1523 n.10 (10th Cir. 1995) ("[U]nder the law of this circuit, analysis of a Speedy Trial Act claim is separate from analysis of a Sixth Amendment violation." (citation omitted)). *But cf. United States v. Abdush-Shakur*, 465 F.3d 458, 464–65 (10th Cir. 2006) ("It is unusual to find a Sixth Amendment violation when the Speedy Trial Act has been satisfied." (citation omitted)).

In evaluating whether a defendant's Sixth Amendment right has been violated, the court considers (1) the length of the delay, (2) its reasons, (3) whether the defendant asserted the right to a speedy trial, and (4) whether the defendant suffered prejudice. *Barker*, 407 U.S. at 530. The court should consider these factors together, in conjunction with any other relevant circumstances. *Toombs*, 574 F.3d at 1274 (citation omitted).

This is not the first time the court has considered whether defendant's constitutional right to a speedy trial has been violated. In October 2011, defense counsel filed a motion to dismiss on the same basis. In November 2011, the court denied the motion. At that time, the court found that the *Barker* factors weighed against finding a constitutional violation. Nearly two-and-a-half more years have passed since that ruling. Defendant has still not had a jury trial in this case. It is time to re-examine the factors.

### **Length of the Delay**

First: the length of the delay. This inquiry serves as a threshold consideration; the court need only look at the remainder of the factors if the delay is presumptively prejudicial. *United States v. Hill*, 197 F.3d 436, 443–44 (10th Cir. 1999) (citations omitted). While there is no bright line rule for a length of time that is presumptively prejudicial, generally a one-year delay will qualify for the presumption. *Castro v. Ward*, 138 F.3d 810, 819 (10th Cir. 1998) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1991); *see also United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("Delays approaching one year generally satisfy the requirement of presumptive prejudice."). The weight of the delay depends on the length—the longer the delay, the more this factor weighs in favor of defendant, unless the nature of the charge justifies the delay. *United States v. Jackson*, 627 F.2d 1198, 1208 (10th Cir. 2010). The relevant inquiry is "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652 (citation omitted).

In this case, over six-and-a-half years have passed since defendant was indicted. Without doubt, this delay is presumptively prejudicial. *See Barker*, 407 U.S. at 533 (referring to a five year delay between arrest and trial as "extraordinary"). The charges in the case are complex—but not so complex as to single-handedly justify the delay. The court tried defendant's co-defendant in

September 2010.  Although there were valid reasons that the court was unable to also conduct defendant's trial at that time, it is certainly debatable whether an additional delay of nearly four years is reasonable.  And significantly, more delay is on the horizon.  The earliest the court expects to conduct a trial in this case is the fall of 2014.  This case will likely span at least seven years before it is resolved.  This factor weighs heavily in favor of defendant.

### **Reasons for the Delay**

Second: the reasons for the delay.  In reviewing the justification for delay, the court examines where the blame lies for the delay.  *Doggett*, 505 U.S. at 651.  The burden lies with the government to show "an acceptable rationale for the delay."  *Seltzer*, 595 F.3d at 1177; *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (citation omitted).  Delay designed to interfere with the defense weighs heavily against the prosecution, *Barker*, 407 U.S. at 531, while delay caused by the defense weighs against the defendant, *id*. at 529; *Toombs*, 574 F.3d at 1274 (citations omitted).  "[T]he reason for the delay[ ] 'weighs against the government in proportion to the degree to which the government caused the delay.'"  *United States v. Yehling*, 456 F.3d 1236, 1244 (10th Cir. 2006) (quoting *Batie*, 433 F.3d at 1291).  When the defendant does not argue deliberate delay and the government does not fault the defendant for the delay, the court must assess negligence against the government and weigh this factor moderately against the government.  *Jackson*, 390 F.3d at 1262 (citations omitted).  Finally, delay caused by defense counsel is charged against the defendant.  *Vermont v. Brillon*, 556 U.S. 81, 90–91 (2009) (citation omitted); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Determining where the blame lies for delay in this case is complicated.  Because the government responded to defendant's motion only with statutory speedy trial arguments, it missed the opportunity to give reasons for the various delays.  And—as explained above—the government bears

the burden on this factor. Nevertheless, the court will attempt to determine where the responsibility should lie for this case's lengthy history.

Generally, this case can be broken into seven time periods of delay. These time periods are precise in neither span nor types of case activity. But they do help form a picture of the reasons this case is still pending.

### Period One – Complexity and Blogging

The government indicted defendant in September 2007. The indictment charged nineteen counts of conspiracy, wire fraud, and money laundering. The first two years of the case passed without trial largely because of the complexity of the charges and the amount of discovery. The parties also spent a good amount of time litigating the propriety of defendant's outside activities (such as blogging), and during the first two years, the government filed two superseding indictments and multiple motions to revoke bond. Both sides bear some responsibility for slowing the prosecution during this time period.

### Period Two – Competency

The third year—beginning around August 2009—was spent resolving questions of defendant's competency. During this year, the court found defendant incompetent to stand trial and ordered him hospitalized to attempt to restore his competency. Year three ended with an unfinished *Sell*[1] proceeding to determine whether to involuntarily medicate defendant. The length of time that this process took was unnecessarily extended by about a month-and-a-half because defendant was not transported between facilities with requisite speed. While the slow travel can be charged to the government, the court cannot assess any fault for the remainder of the time spent assessing and restoring defendant's competency.

---

[1] *Sell v. United States*, 539 U.S. 166 (2003).

### Period Three – Interlocutory Appeal

The next eight months of the case were spent in interlocutory appeal. Defendant filed a notice of appeal pro se (despite being represented by counsel), challenging the court's decision to return him to the Federal Medical Center at Butner, North Carolina for voluntary medication. While the case was on appeal, defendant remained at Butner for a significant amount of time, although he arguably should have been transported back to CCA in Leavenworth, Kansas for continued detention closer to his home. And although both the government and defense counsel initially encouraged the court to take the measures that it did leading to the appeal, the government eventually changed its position on appeal.

The court believes that all attorneys in the case—the government and defense counsel—and even the court bear responsibility for this delay. The government and defense counsel failed to disclose to the court authority governing the court's *Sell* hearing that they should have identified. On the other hand, the court also could have—and, in retrospect, arguably should have—found the authority on its own. The court recognizes, however, the fluid nature of the proceedings at that stage of the case, and the fact that it is always easier to see the correct path in hindsight.

As noted above, the court ordinarily counts delays caused by defense counsel against a defendant. *Brillon*, 556 U.S. at 90–91 (citation omitted); *Coleman*, 501 U.S. at 753. But this situation falls outside the realm of ordinary circumstances. Significant to the court is the fact that defendant <u>himself</u> filed the appeal pro se. This court certified the appeal as frivolous, (Doc. 341), and the government initially moved to dismiss the appeal for lack of jurisdiction, Appellee's Motion to Dismiss Interlocutory Appeal at 2, *United States v. Neighbors*, No. 10-3202 (10th Cir. Sept. 3, 2010), ECF No. 9794793. Although defense counsel entered an appearance during the appeal, she eventually

moved to withdraw based on an irreconcilable conflict, and the Tenth Circuit appointed new appellate counsel.

It is now clear that defendant's pro se appeal was justified by defense counsel's actions (agreeing to attempt voluntary medication without first completing the *Sell* hearing). This suggests that counting the appeal delay against defendant would be inequitable. *Cf. Brillon*, 556 U.S. at 94 ("The general rule attributing to the defendant delay caused by assigned counsel is not absolute. Delay resulting from a systemic 'breakdown in the public defender system' could be charged to the State." (internal citations omitted)). *But cf. United States v. Loud Hawk*, 474 U.S. 302, 316 (1986) (noting that a defendant who filed an interlocutory appeal—thereby delaying his trial—"normally should not be able . . . to reap the reward of dismissal for failure to receive a speedy trial."). Also significant is the fact that defendant's interlocutory appeal was not on an issue related to the merits of his case. Rather, it related to his competence to stand trial and the efforts to restore his competency. The court takes responsibility for this delay and also holds the government responsible to some extent, but does not count this delay against defendant.

### Period Four – Competency Part II

For four months after the Tenth Circuit issued a mandate on the interlocutory appeal, the parties took necessary measures to address the outstanding competency issue. The court appointed new counsel, defendant underwent another mental evaluation, and the court eventually found that defendant was competent to proceed. No fault is assessed during this period.

### Period Five – New Counsel

Next: Beginning around September 2011, five more months passed. During that time, new counsel reviewed discovery and prepared for trial, filing several motions. Defendant had a trial setting in February 2012. Before the trial date, however, defense counsel moved to continue the trial because

of the complexity of the case and because the parties were engaging in plea negotiations. The court moved the trial to April 2012. During these five months, the case progressed as the court would expect. It was reasonable for new counsel to need time to review the file, submit motions, and negotiate with the government. Again, no fault is assessed during these five months.

## Period Six – Defense Counsel's Health

The next period of time—from roughly March 2012 through January 2014—is most troubling for the court. During this time period, the court vacated five trial settings. Each time (with the exception of the last time), the court granted a motion by defendant to continue the trial because of serious health conditions of defense counsel. The last time, defense counsel moved to withdraw shortly before trial. But before the court could hear the motion, counsel's health spiraled downward again. Defense counsel was hospitalized, and the court could not hear the motion to withdraw until after the trial date passed.

The court is not concerned whether each continuance was independently warranted. Counsel's health conditions were serious and required extensive care and treatment. The government—who was admirably sensitive to counsel's health concerns—agreed to each of the continuances. And each time the court continued trial, defendant advised that he wanted to keep counsel of record as his attorney, even if it meant delaying trial.

Once again, the court appreciates that defense counsel's delays generally count as defendant's delays. *See Brillon*, 556 U.S. at 90–91 (citation omitted); *Coleman*, 501 U.S. at 753. But under these circumstances, the court questions whether that assessment is appropriate. Three of the medical issues required between four and six months of recovery before counsel could be prepared for trial. If, instead of agreeing to each continuance, defendant had insisted on new counsel, he would not have received a trial date within that same amount of time. Given counsel's serious medical conditions,

going to trial on the date scheduled was not an option. It seems unfair to charge defendant with a delay that he (1) could not have prevented and (2) had little meaningful choice whether to oppose if he desired an expeditious trial.

On the other hand, certainly the government did not take intentional action that led to these delays. It cannot even be said that the government acted with negligence. Indeed, the nearly two years of the sixth period consisted of a series of highly unfortunate circumstances outside the control of anyone involved. The court does not believe it appropriate to charge either side with the delays due to defense counsel's health.

### Period Seven – Pro Se Representation

The case is now about four months into the current period of time. Defendant proceeds pro se and has filed a number of motions. Although the court was set to hear the pretrial motions soon, the case does not yet have a new trial setting. Defendant recently requested additional time to file pretrial motions to complete his investigation. Thus far, there has been no undue delay to charge against either side.

### Conclusion – Reasons for Delays

Based on the above analysis, the court concludes that the government is solely responsible for a small percentage of the excessive time this case has been pending. But defendant is also not to blame. The progression of this case—or lack thereof—is built on an unusual multitude of unfortunate circumstances. It is nearly impossible to lay blame in any one place. In the end, this factor is relatively neutral, but weighs moderately against the government. *See Jackson*, 390 F.3d at 1262 ("Moreover, when the petitioner does not argue that the state deliberately delayed his trial and the state does not argue that the petitioner caused the delay—as occurs in this case—courts must conclude

negligence on the part of the government and weigh the second *Barker* factor moderately against the state.").

### **Defendant's Assertion of His Right**

Third: defendant's assertion of his right to a speedy trial. "[T]he defendant's assertion of the speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994) (citations and quotations omitted). Moreover, merely filing a motion to dismiss after-the-fact is insufficient to show that a defendant desired a speedy trial. *Batie*, 433 F.3d at 1291. The relevant inquiry is whether defendant's behavior has shown "a desire to go to trial with dispatch." *Id.*; *see also United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). The Tenth Circuit has recognized this factor as "[p]erhaps [the] most important" factor. *Batie*, 433 F.3d at 1291; *see also United States v. Gould*, 672 F.3d 903, 938 (10th Cir. 2012) (citing *Batie*, 433 F.3d at 1291).

As noted above, this is not the first time that defendant has properly raised a Sixth Amendment speedy trial issue. In October 2011, counsel moved to dismiss the case on the same basis. Defendant also mentioned his right to a speedy trial in some of his many pro se submissions that were improperly filed while he was represented by counsel. (*See, e.g.*, Docs. 630 at 9 (referring to a motion filed by Carrie Neighbors regarding speedy trial time); 481 at 2 (mentioning a speedy trial violation in a notice of appeal); 368 at 2 (complaining that defense counsel had not made speedy trial arguments, although it is unclear what those arguments were).)

At times during this case, defendant has shown a strong desire to go to trial. At other times, he has seemed unconcerned about the delay. But defendant's acquiescence in certain delays had some logic behind it. Each time defense counsel moved to continue trial because of his health concerns,

-10-

defendant had little choice whether to agree. If he chose to proceed to trial when counsel could not physically represent him, he would be forced to proceed pro se. If he asked for substitute counsel, the new counsel would not be prepared to immediately proceed to trial. Each time one of counsel's health complications arose, it reasonably appeared that the most promising chance of resolving the case quickly was to keep counsel and wait for his health to improve.

In addition, for much of the early part of this case, defendant was considered mentally incompetent during the delay. His failure to object during this time period should not be held against him. The court finds that this factor weighs in favor of defendant.

## **Prejudice to Defendant**

Finally: prejudice. The burden for this factor is on defendant. *Seltzer*, 595 F.3d at 1179; *Toombs*, 574 F.3d at 1275. "[A] showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, [but] we have great reluctance to find a speedy trial deprivation where there is no prejudice." *Perez v. Sullivan*, 793 F.2d 249, 256 (10th Cir. 1986). On the other hand, the procedural posture of this case matters. Specifically, defendant's lack of a conviction matters. Based on defendant's continued pre-trial status, he does not have quite as great a burden of showing prejudice as a defendant who has already been convicted. *Gould*, 672 F.3d at 939 ("But the prejudice calculus changes once a defendant has been convicted: once a defendant has been convicted, the rights of society increase in proportion to the rights of the defendant. Post-conviction prejudice therefore must be substantial and demonstrable." (citation and internal quotation marks omitted)).

There are two ways to show prejudice: by applying a presumption in cases of extreme delay, and by showing particularized prejudice. *Jackson*, 390 F.3d at 1263. The presumption discussed here is different from that discussed under the first *Barker* factor.

Presumptive prejudice applies in cases of excessive delay. *Doggett*, 505 U.S. at 655–66 (finding excessive delay when there was an eight-and-a-half year delay between indictment and arrest, six years of which was due to the government's negligence); *see also Jackson*, 390 F.3d at 1264 n.4 (declining to decide whether a delay of less than six years can be presumptively prejudicial); *United States v. Cone*, 310 F. App'x 212, 219 n.10 (10th Cir. 2008) (declining again to draw a bright line for the length of delay required to trigger the presumption). The importance of this presumptive prejudice increases proportionately to the length of delay. *Doggett*, 505 U.S. at 656.

If presumptive prejudice does not apply, the court must evaluate whether defendant has made a particularized showing of prejudice. The court assesses particularized prejudice with three interests in mind: (1) "preventing oppressive pretrial incarceration"; (2) "minimizing anxiety and concern of the accused"; and (3) "limiting the possibility that the defense will be impaired." *United States v. Kalady*, 941 F.2d 1090, 1095 (10th Cir. 1991). Of these interests, the third is the most important. *Dirden*, 38 F.3d at 1138 (noting that the third consideration "is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system'" (quoting *Barker*, 407 U.S. at 532)). But this interest is also the most difficult to prove because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532).

Whether this is a presumptive prejudice case is a close call. In a vacuum, the length of time the case has been pending qualifies for the presumption. But, as explained above, the court cannot charge all of this time—or even most of this time—to the government. And cases applying the presumption have involved more negligent or intentional acts by the government. *See, e.g.*, *Doggett*, 505 U.S. at 657–58; *United States v. Toma*, 869 F. Supp. 2d 1315, 1322 (D. Kan. 2012) (applying presumption

with seventy-two month delay primarily faulted to governmental negligence). Despite the length of time the case has been pending, the court does not believe it appropriate to apply the presumption here.

The court therefore evaluates whether defendant has made a particularized showing of prejudice. The first interest—preventing oppressive pretrial incarceration—weighs in defendant's favor. During the time his competency was in question, defendant served nearly two-and-a-half years in custody. He has been released on bond since September 2011, but at least some of the time defendant spent in custody could have been avoided had he been transported more quickly and had the government been more proactive on the *Sell* issue. And if defendant had been transported back to Kansas (specifically, to CCA, where his wife was also being housed) instead of left in Butner during his interlocutory appeal, perhaps some of defendant's physical and mental deterioration could have been prevented. During this time, defendant's wife was standing trial on the charges in Kansas City.

Defendant's incarceration also directly impacted his anxiety and stress, which is the second interest. The "anxiety and stress" consideration requires more than ordinary anxiety or stress. *See Dirden*, 38 F.3d at 1138–39 (noting the absence of "any special harm suffered which distinguishes his case from that of any other arrestee awaiting trial") (citation omitted). But the court's observations over the course of this case are that defendant, indeed, has suffered from extraordinary anxiety and stress. In fact, the court is unsure whether it has ever seen prosecution take as big of a toll on a defendant as it has with this defendant. The court has seen first-hand the deterioration in defendant's physical and mental health throughout the course of this case. Never was the impact more apparent than when defendant was in custody for competency evaluation and restoration. It did not stop after incarceration, however. While defendant's appearance and presence improved after being released, the court observes that defendant has at times appeared unstable as the case has continued without resolution. This interest weighs in favor of defendant.

Finally, the court considers the possibility that the defense will be impaired. Defendant has not provided specific examples of how his defense has been impaired. While this works against defendant, the absence of specific examples does not automatically extinguish defendant's claim. In determining whether a defense is likely to be impaired, the court considers the complexity of the case. *Toma*, 869 F. Supp. 2d at 1320 (citing *Backus v. Hartley*, 346 F. App'x 336, 339 (10th Cir. 2009). The complexity inquiry involves looking at the number of witnesses and amount of evidence. *Id.*

Here, it is somewhat difficult to identify specific harm from the delay because defendant has not yet been tried. His co-defendant, however, was tried in 2010. In that trial, the government presented thirty witnesses and over three hundred exhibits. Defendant's co-defendant presented only one witness. The trial lasted eight days. This level of complexity carries with it a higher risk of an impaired defense. Whether time would impair the government or defendant is difficult to ascertain, but the court finds—at a minimum—a reasonable probability that the defense will be impaired because of the significant amount of time that has passed.

After considering the interests involved, the court determines that defendant has suffered particularized prejudice as a result of the delay in this case.

### **Balance of the Factors**

After considering all of these factors carefully and acknowledging the very unique circumstances of this case, the court makes the following determination. The court believes that in totality, the factors weigh in favor of finding a constitutional violation. The delays in this case have been excessive and oppressive. Defendant's ability to ultimately present his defense has been impaired. Over six years after being indicted, defendant still has no closure. As the Supreme Court noted in *United States v. MacDonald*:

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily

> by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

456 U.S. 1, 8 (1982).

The circumstances of this case trouble the court greatly, and the court does not take this decision lightly. This is not a case where the court believes that the government has intentionally delayed resolution. To the contrary, the government's decision not to oppose continuances based on defense counsel's health showed class and civility that the court both commends and encourages. But much of the delay in this case has also not been the fault of defendant. Moreover, the reasons for the delay are only one factor that the court considers. The factors in combination lead the court to the conclusion that a constitutional violation has occurred.

The constitution requires that a defendant receive a speedy trial. That has not happened here. The case is dismissed with prejudice.

**IT IS THEREFORE ORDERED** that Defendant's Pro-Se Motion to Dismiss the Pending Indictment[] with Prejudice on Grounds of Due Process of Law Violation (Doc. 635) is granted in part.

**IT IS FURTHER ORDERED** that defendant's Motion to Dismiss with Prejudice (Doc. 656) is granted.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot. The status conference set for May 29, 2014 is cancelled.

**IT IS FURTHER ORDERED** that the Second Superseding Indictment is dismissed with prejudice.

Dated this 19th day of May, 2014, at Kansas City, Kansas.

                                       s/ Carlos Murguia
                                       **CARLOS MURGUIA**
                                       **United States District Judge**